Evan J. Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER CAVE,<br><br>            Plaintiff,<br><br>    vs.<br><br>SYNACOR, INC., KEVIN M. RENDINO,<br>HIMESH BHISE, LISA DONOHUE,<br>MARWAN FAWAZ, ANDREW KAU,<br>and MICHAEL MONTGOMERY,<br><br>            Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br>(1)  Breach of Fiduciary Duties<br>(2)  Aiding and Abetting Breach of Fiduciary Duties<br>(3)  Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(4)  Violation of § 14 (d) of the Securities Exchange Act of 1934<br>(5)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Christopher Cave ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this action against Synacor, Inc. ("Synacor" or the "Company") and Synacor's Board of Directors (the "Board" or the "Individual Defendants"), for violations of Sections 14(e), 14(d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"),

and for breaches of fiduciary duty as a result of the Individual Defendants' efforts to sell the Company to CLP SY Holding, LLC, through its wholly-owned subsidiary SY Merger Sub Corporation ("Merger Sub," and with CLP SY Holding, LLC, "Centre Lane") as a result of an unfair process for an unfair price, and to enjoin an upcoming tender offer on a proposed all cash transaction valued at approximately $92 million (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a February 11, 2021 filing with the United States Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").  Under the terms of the Merger Agreement, Centre Lane will commence a tender offer to acquire all of the outstanding shares of Synacor's common stock at a price of $2.20 per share in cash. As a result, Synacor will become an indirect wholly-owned subsidiary of Parent, a subsidiary of the Centre Lane.

3.      Thereafter, on March 3, 2021, Synacor filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the Recommendation Statement describes an insufficient process in which the Board inefficiently stretched a sales process of the Company out for several years, involving multiple engagements of multiple financial advisors, at least one prior entered merger agreement, and several indications of interest from third parties since.  Such a long process, beginning in January of 2018, no doubt led to much corporate waste.

5.      In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell Synacor without first taking steps to ensure that Plaintiff as a public stockholder of Synacor would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or the Centre Lane without regard

for Synacor's public stockholders, including Plaintiff.  Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Synacor stockholders, including Plaintiff.

6.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to the Company's public stockholders such as Plaintiff.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7.      In violation of the Exchange Act and in further violation of their fiduciary duties, Defendants caused to be filed the materially deficient Recommendation Statement on March 3, 2021 with the SEC in an effort to solicit stockholders including Plaintiff to tender their Synacor shares in favor of the Proposed Transaction.  The Recommendation Statement is materially deficient, deprives Plaintiff of the information they need to make an intelligent, informed and rational decision of whether to tender their shares in favor of the Proposed Transaction, and is thus in breach of the Defendants' fiduciary duties.  As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Synacor, provided by Synacor to the Company's financial advisor Canaccord Genuity LLC. ("Canaccord"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Canaccord and provides to the Company and the Board

8.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction or,

in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

## PARTIES

9.      Plaintiff is a citizen of California and, at all times relevant hereto, has been a Synacor stockholder.

10.     Defendant Synacor is a cloud-based software and services company serving global video, internet and communications providers, device manufacturers, governments and enterprises.  Synacor is organized under the laws of Delaware and has its principal place of business at 40 La Riviere Drive, Suite 300, Buffalo, NY 14202.  Shares of Synacor common stock are traded on the Nasdaq under the symbol "SYNC."

11.     Defendant Kevin M. Rendino ("Rendino") has been a Director of the Company at all relevant times.  In addition, Rendino serves as the Chairman of the Company Board.

12.     Defendant Himesh Bhise ("Bhise ") has been a director of the Company at all relevant times.  In addition, Bhise serves as the Company's Chief Executive Officer ("CEO").

13.     Defendant Lisa Donohue ("Donohue") has been a director of the Company at all relevant times.

14.     Defendant Marwan Fawaz ("Fawaz") has served as director of Company at all relevant times.

15.     Defendant Andrew Kau ("Kau") has served as director of Company at all relevant times.

16.     Defendant Michael Montgomery ("Montgomery") has been a director of the Company at all relevant times

17.     The defendants identified in paragraphs 11 through 16 are collectively referred to herein as the "Director Defendants" or the "Individual Defendants."

18.     Non-Party Centre Lane is a private investment firm that invests in the equity and debt of middle market companies in North America. Centre Lane is a New York-based private investment firm founded in 2007 by Quinn Morgan and Ken Lau.

19.     Non-Party Merger Sub is Delaware Corporation and a party to the Merger Agreement.  Merger Sub is a wholly-owned subsidiary of Centre Lane created to give effect to the Proposed Transaction.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Synacor trades on the NASDAQ stock exchange which maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

23.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Synacor and owe the Company the duties of due care, loyalty, and good faith.

24.     By virtue of their positions as directors and/or officers of Synacor, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Synacor to engage in the practices complained of herein.

25.     Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

      a.     act with the requisite diligence and due care that is reasonable under the circumstances;

      b.     act in the best interest of the company;

      c.     use reasonable means to obtain material information relating to a given action or decision;

      d.     refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

      e.     avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

      f.     disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

26.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Synacor, are obligated to refrain from:

      a.     participating in any transaction where the directors' or officers' loyalties are divided;

      b.     participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders, including Plaintiff; and/or

c.      unjustly enriching themselves at the expense or to the detriment of

the Company or its stockholders, including Plaintiff.

27.     Plaintiff alleges herein that the Individual Defendants, separately and together, in
connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they
owe to Synacor and Plaintiff, including their duties of loyalty, good faith, and due care.

28.     As a result of the Individual Defendants' divided loyalties, Plaintiff will not receive
adequate, fair or maximum value for his Synacor common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

29.     Synacor, a digital technology company, provides email and collaboration software,
cloud-based identity management platforms, managed web and mobile portals, and advertising
solutions in the United States and internationally. It operates through two segments, Software &
Services, and Portal & Advertising. The company, through its managed portals and advertising
solutions, enables its customers to earn revenue by monetizing media among their consumers. It
also provides Cloud ID Authentication, a cloud-based identity and access management platform
for large enterprises that offers native single sign on, home-based authentication, and device
management to reduce login friction and enhance security; Email/Collaboration services, which
include white-label hosting, security, and migration; and paid content and premium services. The
company serves video, internet, and communications providers; device manufactures; media
companies; government entities; enterprises; financial institutions; and small and medium sized
businesses. It markets its products through direct and indirect sales channels. The company was
formerly known as CKMP, Inc. and changed its name to Synacor, Inc. in July 2001. Synacor, Inc.
was founded in 1998 and is headquartered in Buffalo, New York.

30.     The Company's most recent financial performance press release before the
announcement of the Proposed Transaction indicated sustained and solid financial performance.
For example, in the November 13, 2020 press release announcing its 2020 Q3 financial results, the
Company highlighted such milestones as revenues of $18.5 million, Portal & Advertising Segment

Adjusted EBITDA margin of 7% with sequential revenue growth of 16%, and $8.1 million of recurring software revenue, that included 17% year-over-year growth in our focus areas of Zimbra Enterprise SaaS and Cloud ID SaaS.

31.    Speaking on these positive results, Synacor CEO Defendant Bhise stated, "Our third quarter results provide real evidence of Synacor's transformation into a world-class Enterprise SaaS company that is also committed to expanded margins and positive cash flow. imbra Enterprise SaaS plus Cloud ID SaaS delivered 17% year-over-year growth, our second consecutive quarter of double digit Enterprise SaaS revenue growth that we expect will continue into 2021. We have also improved profitability: year-to-date Software Segment adjusted EBITDA margin expanded to 32% from 27% a year ago, and our Portal & Advertising Segment adjusted EBITDA margin was 7% in Q3 and break-even year-to-date, despite the impact of COVID-19. We enter Q4 and 2021 with noteworthy Cloud ID customer launches, a compelling new Zimbra Cloud collaboration platform, a pronounced market recovery underway in Advertising, a robust sales pipeline, and a cost structure that will yield positive free cash-flow."

32.    Despite this upward trajectory and financial promise, the Individual Defendants have caused Synacor to enter into the Proposed Transaction for insufficient consideration.

***The Flawed Sales Process***

33.    As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible no matter the price.

34.    Notably, the Company has been attempting to sell itself since at least January of 2018, when it entered into an indication of interest with a potentially interested third party and engaged with former financial advisor Liontree LLC.  Ultimately this deal fell through, as did several others, include a signed upon merger agreement with a separate third party which was entered into in February of 2020 and ultimately was terminated in June of 2020.

35.     Such a clear mismanagement of the sales process indicates a high likelihood of corporate waste during this time as well as a lower eventual merger consideration.  Despite this the Recommendation Statement fails to indicate specific reasoning as to why the sales process could not be done in a more efficient manner.

36.     The Recommendation Statement also does not indicate how much money was paid, or is currently owed, by the Company to any previous financial advisors or to Canaccord for engagements regarding previous potential strategic transactions during the sales process.

37.     Next, while the Recommendation Statement does indicate that a Special Committee was created to run the sales process, it fails to indicate whether all the directors assigned to sit on this committee were independent, outside directors.  Nor does the Recommendation Statement indicate what specific powers this Special Committee had in relation to approval of any potential agreement.

38.     In addition, the Recommendation Statement is silent as to the nature of the various confidentiality agreements entered into between the Company and potentially interested third parties throughout the sales process, including Centre Lane, whether these agreements differ from each other, and if so in what way, including failing to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Centre Lane, would fall away.

39.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

40.     On February 11, 2021, the Company issued a press release announcing the Proposed Transaction.  The press release states, in relevant part:

> **BUFFALO, N.Y., February 11, 2021 –** Synacor, Inc. (Nasdaq: SYNC), a leading provider of cloud-based Collaboration and Identity Management software and services serving global enterprises, video, internet and communications providers, and governments, today announced that it has entered into a definitive agreement

and plan of merger with an affiliate of Centre Lane Partners, LLC, a New York-based private investment firm, to be acquired in an all-cash transaction that values Synacor at approximately $92 million.

Under the terms of the agreement, Centre Lane will commence a tender offer to acquire all of the outstanding common shares of Synacor for $2.20 in cash per share. This represents a 29% premium to the 60-day volume weighted average stock price as of February 10, 2021. Synacor's Board of Directors has unanimously approved the agreement.

Himesh Bhise, Chief Executive Officer of Synacor, commented "Partnering with Centre Lane, a firm with $2 billion of capital under management and an established track record of helping software companies scale, provides our stockholders with compelling value while benefiting our customers and employees. Our Board of Directors has thoroughly and carefully considered our alternatives and believes the Centre Lane proposal is the best path forward for the company. The Synacor team looks forward to working with Centre Lane to scale the business and deepen our value proposition to customers."

"We are thrilled to support the continued growth and evolution of Synacor," said Kenneth Lau, Managing Director of Centre Lane. "Himesh and his team have transformed Synacor into a world-class Enterprise SaaS company, while absorbing the costs and navigating the requirements of being publicly traded. We look forward to combining our expertise and capital resources with Synacor's talented team to further enhance its Identity, Collaboration and Advertising products, expand its customer pipeline and scale the business."

Under the terms of the agreement, Centre Lane will commence a tender offer to acquire all issued and outstanding shares of Synacor common stock for $2.20 per share in cash. The transaction is subject to customary closing conditions and regulatory approvals, including the tender of a majority of the issued and outstanding shares of Synacor common stock. Centre Lane has committed capital to complete the transaction and receipt of financing by Centre Lane is not a condition to closing. Centre Lane has also entered into tender and support agreements with certain stockholders represented on the Synacor Board, under which they have committed to tender all of their Synacor shares in the tender offer, which represent approximately 18% of Synacor's issued and outstanding shares.

Following completion of the tender offer, Centre Lane will acquire all remaining shares of Synacor at the same price of $2.20 per share in cash through a second-step merger. The closing of the transaction is expected to take place during or prior to the second quarter of 2021. Following completion of the transaction, Synacor's common stock will be delisted from the Nasdaq Stock Market and deregistered under the Securities Exchange Act of 1934, as amended.

***The Inadequate Merger Consideration***

41.     As set forth above, the Proposed Transaction significantly undervalues the Company's financial prospects and opportunities for future growth establish the inadequacy of the merger consideration.

42.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.  Moreover, the valuation does not adequately take into consideration how the Company is performing, considering key financial improvements.

43.     For example, financial analysts have valued the Company's stock as high as $3.00 per share within the past year.

44.     In addition to its stock price and financials, Synacor recently announced a strategic partnership with Openfit, further solidifying the company's dedication to success. The January 26, 2021 Press Release commented on the partnership, "Synacor Inc. (NASDAQ: SYNC) today announced its work with Openfit, a leading health and fitness platform, to help make the company's trainer-led workout content available to millions of TELUS subscribers. Openfit is using Cloud ID identity management to seamlessly authenticate TELUS subscriptions and quickly extend access to millions of potential subscribers. Now, TELUS subscribers can enhance the value of their subscriptions with the ability to explore new content experiences outside of the typical Pay TV viewing lineup… Synacor's work with Openfit represents the early days of a rising trend. Telecom operators bring tremendous value to the digital home ecosystem and sizable audiences to emerging apps that can deliver additional value to subscribers. Through its deal with TELUS, Openfit has the potential to make next-gen health and wellness experiences a reality for millions of the operator's subscribers in Canada."

45.     Another major strategic partnership landed by Synacor was its connection with EPIC, an emerging premium television network. The September 15, 2020 Press Release commented on the details, "Synacor Inc. (NASDAQ: SYNC) today announced that premium television network EPIX, an MGM Company, has deployed Cloud ID, the consumer identity and access management platform trusted by leading entertainment brands, to better serve millions of subscribers that want to view content on a range of platforms. Moving to Cloud ID will drive cost savings for EPIX and accelerate growth as the company pursues service scale and faster device integrations. The rollout was completed via a seamless migration that did not disrupt subscriber

viewing sessions. Cloud ID replaced a legacy identity management solution at EPIX. 'Identity management has become critically important to overall subscriber experiences and after considering all options, ranging from in-house development to a number of competitive solutions, Synacor's Cloud ID emerged as the ideal platform for EPIX,' said Sacha Stanton, CTO, EPIX. 'As we aim to quickly integrate with new devices and meet increasing subscriber demand for streaming content, Synacor's extensive track record of success gives us the confidence that we have the right partner for the journey ahead.'"

46.     The February 11, 2021 *Light Reading* article on the Proposed Transaction commented on Synacor's portfolio and future, saying, "Synacor's portfolio includes Cloud ID Identity & Access Management services, as well as its Zimbra-branded email and collaboration system (Synacor acquired Zimbra in 2015). Synacor's media and pay-TV customers include HBO, Dish Network/Sling TV, YouTube TV, T-Mobile, Atlantic Broadband, CenturyLink, Google Fiber, Telus, TDS and WideOpenWest, among others. The company, which has been in the midst of a transition to a more SaaS-focused business, announced the deal in tandem with preliminary Q4 2020 results. Synacor's Q4 revenues of $24 million beat guidance of $20 million to $22 million. Synacor broke even in the period, beating an expected net loss of $500,000 to $1.1 million."

47.     Clearly, while the deal will be beneficial to Centre Lane it comes at great expense to Plaintiff and other public stockholders of the Company.

48.     Moreover, post-closure, Plaintiff will be frozen out of any future benefit from his investment in Synacor's bright future.

49.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for the Centre Lane at the expense of Plaintiff and like Synacor public stockholders, which clearly indicates that Synacor stockholders were not an overriding concern in the formation of the Proposed Transaction.

*Preclusive Deal Mechanisms*

50.     The Merger Agreement contains certain provisions that unduly benefit the Centre Lane by making an alternative transaction either prohibitively expensive or otherwise impossible. Notably, in the event of termination, the merger agreement requires Synacor to pay up to $3.5 million to the Centre Lane and/or its affiliates, if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, Synacor must pay this termination fee even if it consummates any competing Superior Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

51.     The Merger Agreement also contains a "No Solicitation" provision that restricts Synacor from considering alternative acquisition proposals by, *inter alia*, constraining Synacor's ability to solicit or communicate with potential acquirers or consider their proposals.  Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide *"Acquisition Proposal"* if it constitutes or is reasonably calculated to lead to a "*Superior Proposal*" as defined in the Merger Agreement.

52.     Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  Here, the Individual Defendants agreed to provide to the Centre Lane and/or its affiliates information in order to match any other offer, thus providing the Centre Lane access to the unsolicited bidder's financial information and giving Centre Lane the ability to top the superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of the Centre Lane.

53.     These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and

pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and its public stockholders, including Plaintiff.

54.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

55.     The breakdown of the benefits of the deal indicate that Synacor insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Synacor.

56.     Notably, Company insiders, currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, as follows:

| Name of Executive Officer or Director and Title | Number of Shares | | Cash Consideration for Shares ($) |
|---|---|---|---|
| Himesh Bhise, *Chief Executive Officer and Director* | 153,084 | $ | 336,785 |
| Timothy J. Heasley, *Chief Financial Officer* | 41,798 | $ | 91,956 |
| Steven M. Davi, *Executive Vice President, Technology* | 45,921 | $ | 101,026 |
| Elisabeth B. Donahue, *Director* | 70,641 | $ | 155,410 |
| Marwan Fawaz, *Director* | 137,411 | $ | 302,304 |
| Andrew Kau, *Director* | 3,936,555 (1) | $ | 8,660,421 |
| Michael J. Montgomery, *Director* | 179,576 | $ | 395,067 |
| Kevin M. Rendino, *Director* | 2,996,626 (2) | $ | 6,592,577 |

57.     Moreover, upon the consummation of the Proposed Transaction, the Recommendation Statement indicates that each outstanding Company stock option will be canceled and converted into the right to receive certain consideration according to the merger agreement as follows:

| Name of Executive Officer or Director and Title | Number of Shares Subject to Vested Company Stock Options(1) | Cash Consideration for Vested Company Stock Options ($) | Number of Shares Subject to Unvested Company Stock Options(1) | Cash Consideration for Unvested Company Stock Options ($) | Total Cash Consideration for Company Stock Options in the Merger ($) |
|---|---|---|---|---|---|
| Himesh Bhise, *Chief Executive Officer and Director* | 21,666(2) $   5,642 | | 1,734(2) $   347 | | $   5,989(2) |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Timothy J. Heasley, *Chief Financial Officer* | 17,187(3) | $ | 7,567 | 7,813(3) | $ | 3,440 | $ | 11,008(3) |
| Steven M. Davi, *Executive Vice President, Technology* | 115,534(4) | $ | 39,398 | 12,266(4) | $ | 5,188 | $ | 44,586(4) |
| Elisabeth B. Donahue, *Director* | 22,500(5) | $ | 9,500 | 22,500(5) | $ | 11,050 | $ | 20,550(5) |
| Marwan Fawaz, *Director* | 22,500(6) | $ | 9,500 | 22,500(6) | $ | 11,050 | $ | 20,550(6) |
| Andrew Kau, *Director* | 26,250(7) | $ | 8,500 | 18,750(7) | $ | 7,400 | $ | 15,900(7) |
| Michael J. Montgomery, *Director* | 22,500(8) | $ | 9,500 | 22,500(8) | $ | 11,050 | $ | 20,550(8) |
| Kevin M. Rendino, *Director* | 29,166(9) | $ | 14,041 | 35,834(9) | $ | 17,359 | $ | 31,400(9) |

58.     Additionally, upon the consummation of the Proposed Transaction, the Recommendation Statement indicates that each outstanding Company RSUs will be canceled and converted into the right to receive certain consideration according to the merger agreement as follows:

| Name of Executive Officer or Director and Title | Number of Shares Subject to RSUs | | Cash Consideration for RSUs ($) |
|---|---|---|---|
| Himesh Bhise, *Chief Executive Officer and Director* | 192,537 | $ | 423,581 |
| Timothy J. Heasley, *Chief Financial Officer* | 102,054 | $ | 224,519 |
| Steven M. Davi, *Executive Vice President, Technology* | 82,145 | $ | 180,719 |
| Elisabeth B. Donahue, *Director* | 47,170 | $ | 103,774 |
| Marwan Fawaz, *Director* | 47,170 | $ | 103,774 |
| Andrew Kau, *Director* | 47,170 | $ | 103,774 |
| Michael J. Montgomery, *Director* | 47,170 | $ | 103,774 |
| Kevin M. Rendino, *Director* | 47,170 (1) | $ | 103,774 |

59.     Furthermore, upon the consummation of the Proposed Transaction, the Recommendation Statement indicates that each outstanding Company PSUs will be canceled and converted into the right to receive certain consideration according to the merger agreement as follows

| Name of Executive Officer or Director and Title | Cash Consideration for Shares ($) | | Cash Consideration for Company Stock Options ($) | | Cash Consideration for RSUs ($) | | Cash Consideration for PSUs ($) | | Total Cash Consideration in connection with the Offer and the Merger ($) |
|---|---|---|---|---|---|---|---|---|---|
| Himesh Bhise, *Chief Executive Officer and Director* | $ | 336,785 | $ | 5,989 | $ | 423,581 | $ | 341,882 | $ | 1,108,237 |
| Timothy J. Heasley, *Chief Financial Officer* | $ | 91,956 | $ | 11,008 | $ | 224,519 | $ | 189,935 | $ | 517,417 |
| Steven M. Davi, *Executive Vice President, Technology* | $ | 101,026 | $ | 44,586 | $ | 180,719 | $ | 151,947 | $ | 478,279 |

| Name | Cash ($)(1) | | Equity ($)(2) | | Perquisites/Benefits ($)(3) | | Tax Reimbursement ($)(4) | | Total ($)(5) |
|---|---|---|---|---|---|---|---|---|---|
| Elisabeth B. Donahue, *Director* | $ | 155,410 | $ | 20,550 | $ | 103,774 | $ | — $ | 279,734 |
| Marwan Fawaz, *Director* | $ | 302,304 | $ | 20,550 | $ | 103,774 | $ | — $ | 426,628 |
| Andrew Kau, (1) *Director* | $ | 8,660,421 | $ | 15,900 | $ | 103,774 | $ | — $ | 8,780,095 |
| Michael J. Montgomery, *Director* | $ | 395,067 | $ | 20,550 | $ | 103,774 | $ | — $ | 519,391 |
| Kevin M. Rendino, (2) *Director* | $ | 6,592,577 | $ | 31,400 | $ | 103,774 | $ | — $ | 6,727,751 |

60.    Certain employment agreements with certain Synacor executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Synacor's common stockholders such as Plaintiff and will be paid out as follows.

| Name | Cash ($)(1) | | Equity ($)(2) | | Perquisites/Benefits ($)(3) | | Tax Reimbursement ($)(4) | | Total ($)(5) |
|---|---|---|---|---|---|---|---|---|---|
| Himesh Bhise | $ | 1,125,905 | $ | 771,452 | $ | 33,504 | | — $ | 1,930,861 |
| Timothy J. Heasley | $ | 471,995 | $ | 425,462 | $ | 19,665 | $ | 16,887 $ | 934,009 |
| Steven M. Davi | $ | 534,716 | $ | 377,252 | $ | 33,352 | | — $ | 945,320 |

61.    The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders such as Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

62.    Thus, while the Proposed Transaction is not in the best interests of Synacor or its stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Recommendation Statement***

63.    On March 3, 2021, the Synacor Board and Centre Lane caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement that, in violation their

fiduciary duties, failed to provide Plaintiff in his capacity as a company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to the Company's stockholders such as Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

64.     Specifically, the Recommendation Statement fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Recommendation Statement fails to disclose:

a.  How much money was paid, or is currently owed, by the Company to any previous financial advisors or to Canaccord for engagements regarding previous potential strategic transactions during the sales process;

b.  The specific powers of the Special Committee;

c.  Whether the directors who make up the Special Committee are independent outside directors;

d.  Whether the Company entered into any confidentiality agreements with any other party besides Centre Lane relating to the sales process, and if so, whether the terms of that agreement differed from the one with Centre Lane, and in what way;

e.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Centre Lane, would fall away;

f.   The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

*Omissions and/or Material Misrepresentations Concerning Synacor's Financial Projections*

65.     The Recommendation Statement fails to provide material information concerning financial projections provided by Synacor management and relied upon by Canaccord in its analyses.  The Recommendation Statement discloses management-prepared financial projections for the Company which are materially misleading.

66.     The Recommendation Statement indicates that in connection with the rendering of their fairness opinions, Canaccord reviewed "certain financial projections and other estimates and data relating to the Company prepared by management of the Company that Canaccord Genuity had been directed to utilize in its analysis".

67.     Accordingly, the Recommendation Statement should have, but fails to provide, certain information in the projections that Synacor management provided to the Board and Canaccord.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the

company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

68.     With respect to the "Company Forecasts" projections, the Recommendation Statement fails to provide material information concerning the financial projections prepared by Synacor management.  Specifically, the Recommendation Statement fails to disclose all material line items for the metrics of:

      a.  Adjusted EBITDA, including the underlying metrics of: operating income before interest, taxes, depreciation and amortization, stock-based compensation expense, asset impairments, restructuring charges, and certain legal expenses and professional services fees; and

      b.  Unlevered Free Cash Flow, including the underlying metrics of: operating income after tax, depreciation and amortization expense, capital expenditures, and changes in net working capital.

69.     The Recommendation Statement also provides non-GAAP financial metrics, but fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

70.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

71.     Without accurate projection data presented in the Recommendation Statement, Plaintiff is are unable to properly evaluate the Company's true worth, the accuracy of Canaccord's financial analyses, or make an informed decision whether to tender their Company stock in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Canaccord*

72.     In the Recommendation Statement, Canaccord describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

73.     With respect to the *Selected Publicly Traded Companies Analysis*, the Recommendation Statement fails to disclose the following:

     a.   The number of fully-diluted shares outstanding for the Company.

74.     With respect to the *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose the following:

     a.   The date on which each selected precedent transaction closed;

     b.   The value of each selected precedent transaction;

     c.   The estimated total cash outstanding as of December 31, 2020 for the Company;

     d.   The estimated net debt as of December 31, 2020 for the Company; and

     e.   The number of fully-diluted shares outstanding for the Company.

75.     With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

     a.   The terminal values in the year 2024 for the Company;

     b.   The specific inputs and assumptions used to determine the perpetual growth rate range of 1.0% to 3.0% utilized;

     c.   The specific inputs and assumptions used to determine the discount rate range of 13.0% to 15.0% utilized;

     d.   Synacor's weighted average cost of capital; and

     e.   The number of fully-diluted shares outstanding for Synacor.

76.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

77.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a public Synacor stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Synacor stockholder.  As such, the Board has breached their fiduciary duties by failing to include such information in the Recommendation Statement.

## FIRST COUNT

## Claim for Breach of Fiduciary Duties

## (Against the Individual Defendants)

78.     Plaintiff repeats all previous allegations as if set forth in full herein.

79.     The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiffs.

80.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff of the true value of his investment in Synacor.

81.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to Plaintiff and like stockholders of Synacor by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Synacor to its public stockholders.

82.     Indeed, Defendants have accepted an offer to sell Synacor at a price that fails to reflect the true value of the Company, thus depriving Plaintiff and like stockholders of the reasonable, fair and adequate value of their shares.

83.     Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff all material information necessary for them to make an informed decision on whether to tender in favor of the Proposed Transaction.

84.     The Individual Defendants dominate and control the business and corporate affairs of Synacor, and are in possession of private corporate information concerning Synacor's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of Synacor which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

85.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff.

86.     As a result of the actions of the Individual Defendants, Plaintiff will suffer irreparable injury in that he will not receive his fair portion of the value of Synacor's assets and have been and will be prevented from obtaining a fair price for their common stock.

87.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff, all to the irreparable harm of the Plaintiff.

88.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND COUNT

### Aiding and Abetting the Board's Breaches of Fiduciary Duty

### (Against Defendant Synacor)

89.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

90.     Defendant Synacor knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred.

91.     As a result of this conduct, Plaintiff has been and will be damaged in that he has been and will be prevented from obtaining a fair price for his shares.

92.     Plaintiff has no adequate remedy at law

### THIRD COUNT

### Violations of Section 14(e) of the Exchange Act

### (Against All Defendants)

93.     Plaintiff repeats all previous allegations as if set forth in full herein.

94.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

95.     Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.].

96.     The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that

the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

97.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

98.     The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

99.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

100.     Plaintiff has no adequate remedy at law.

## FOURTH COUNT

### Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9

### (Against All Defendants)

101.     Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

102.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

103.     Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

104.     SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

105.     Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts,

including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

106. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

107. Plaintiff has no adequate remedy at law

**FIFTH COUNT**

**Violations of Section 20(a) of the Exchange Act**

<u>**(Against all Individual Defendants)**</u>

108. Plaintiff repeats all previous allegations as if set forth in full herein.

109. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Company stockholders.

110. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Recommendation Statement. The Individual Defendants were provided with copies of, reviewed and approved,

and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

111.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Synacor's business, the information contained in its filings with the SEC, and its public statements.   Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders, including Plaintiff, and that the Recommendation Statement was misleading.   As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

112.    The Individual Defendants acted as controlling persons of Synacor within the meaning of Section 20(a) of the Exchange Act.   By reason of their position with the Company, the Individual Defendants had the power and authority to cause Synacor to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Synacor and all of its employees.   As alleged above, Synacor is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.   By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor, and against the Defendants, as follows:

A.    Enjoining the Proposed Transaction;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Declaring and decreeing that the Merger Agreement was agreed to in breach of the

fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

D.     Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Synacor and obtain a transaction which is in the best interests of Synacor and Plaintiff as a Synacor stockholder;

E.     Directing defendants to account to Plaintiff for damages sustained because of the wrongs complained of herein;

F.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: March 9, 2021

BRODSKY & SMITH, LLC

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*